HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

STEPHEN CADENA,

        Plaintiff,

v.

UNITED STATES OF AMERICA,

        Defendant.

CASE NO. C15-5610RBL

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

THIS MATTER came on regularly for trial on June 8, 2017, before the Honorable Ronald B. Leighton, United States District Judge, sitting without a jury. The Court, having considered the evidence before it, including the testimony of witnesses and the documents and exhibits that were admitted by the Court, having heard argument and considered the briefs and memoranda of counsel, having further considered its prior orders herein, and having reviewed the facts and records of this action, makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1. On the morning of June 19, 2012, Veterans Administration ("VA") employee Dianna Bradley, the chief supervisor in Building 132 at the American Lake VA Medical Center

("American Lake"), observed that the automatic doors at the entrance to the building were stuck in the open position and would not close.

2. Later that morning, VA engineer Jeff Wells, VA carpenter Hilarion Careaga, and VA locksmith Bruce Pentico arrived at Building 132 to check the automatic doors.

3. To determine what was wrong with the doors, Mr. Wells turned off the power to the doors, then turned the power back on to allow the controls to the doors to cycle back on. They observed the doors continuously operating properly.

4. Mr. Wells then examined the sensor for dirt and grime that may have affected the door's operation. While Mr. Wells was on a ladder in the middle of the six-foot wide doorway, Mr. Careaga and Mr. Pentico physically blocked the doorway to prevent people from walking through the very limited spaces on either side of the ladder and potentially making contact with Mr. Wells on the ladder. The three VA workers were wearing matching green uniform tops, which identified them as VA employees.

5. The automatic doors did not close while Mr. Wells was on the ladder inspecting the overhead sensor.

6. Approximately two or three times, Mr. Wells descended the ladder and removed it from the doorway so that people, who had stopped inside and outside the doorway at the entrance to Building 132, could pass through safely.

7. While Mr. Wells was on the ladder and Mr. Pentico and Mr. Careaga were blocking the doorway, Plaintiff Stephen Cadena approached the entrance to Building 132, walking directly toward it from Building 81, which is across the street.

8. Mr. Cadena had a walking staff in his right hand for balance.

9. Mr. Pentico saw Mr. Cadena approach the doorway, stop for 10-15 seconds alongside other people who were waiting to use that entrance, and then proceeded to pass by the workers before Mr. Wells could completely descend from his ladder and clear the doorway.

10. Mr. Wells, from his position on the ladder, saw Mr. Cadena move past Mr. Careaga, walk through the tight space to the left of the ladder, and hit his left hand against the left door panel, which was in the open position.

11. The automatic door panels did not close or otherwise move while Mr. Cadena passed through the doorway.

12. The next day, on June 20, 2012, Mr. Cadena sought medical attention for an injury to his left hand—not his wrist. VA doctor Ranjy Basa, M.D., examined Mr. Cadena and reported findings consistent with a hand injury. With respect to Mr. Cadena's left wrist, Dr. Basa found "No joint effusion, no tenderness of wrist joint, no tenderness on any wrist bones, no hematoma."

13. On September 13, 2012, Mr. Cadena was evaluated by Dustin Higbee, a physician's assistant at the VA, who identified some potential "slight widening" of the scapholunate ligament in an x-ray of Mr. Cadena's left hand and wrist. The x-ray indicated Mr. Cadena had early findings of a scapholunate accelerated collapse, which is a condition that pre-existed the alleged injury to his hand and is the likely cause of the scapholunate ligament tear in his wrist.

14. On October 11, 2012, Frederic Johnstone, M.D., examined Mr. Cadena for the purpose of diagnosing and treating pain he was experiencing in his left wrist.

1    15.    Mr. Cadena was unable to tell Dr. Johnstone exactly what had caused the injury to his left wrist. The only potential mechanism of injury that Mr. Cadena identified was contact with the left door panel at the entrance to Building 132.

A torn scapholunate ligament is routinely caused by a forward fall with hands outstretched, palms out. This is not what happened to Mr. Cadena at the canteen door. He hit the back of his hand near the knuckle of the thumb and index finger of the left hand. This impact is inconsistent with a scapholunate ligament tear.

16.    On October 30, 2012, Dr. Johnstone—based on an MRI of Mr. Cadena's left wrist—diagnosed a torn scapholunate ligament and recommended an arthroscopic procedure on Mr. Cadena's left wrist, which he performed on November 19, 2012.

17.    In December 2013, Dr. Johnstone recommended that Mr. Cadena undergo a left wrist arthrodesis—or fusion—because he was continuing to experience pain in his left wrist after the arthroscopic surgery. The primary purpose of the surgery was to relieve Mr. Cadena's left wrist pain.

18.    Mr. Cadena's left wrist fusion was successful, achieving full fusion without delayed healing.

19.    On November 24, 2015, Mr. Cadena's occupational therapist, Mary Matthews-Brownell, documented that his left hand and wrist function had "declined which is not due to canteen fall [on June 19, 2012] but a fall after his L wrist had surgery" in April 2015.

20.    On April 12, 2016, Dr. Johnstone noted that Mr. Cadena reported a second fall on his left wrist that had caused pain and swelling on the dorsal aspect of his left distal forearm.

21.    Mr. Cadena continued to report persistent pain in his forearm several months after the second fall on his left wrist.

22. As a result of the fusion surgery, Mr. Cadena's left wrist will not affect his ability to lead a normal independent life, will not prevent him from doing gripping activities with his left hand, will not prevent him from lifting or carrying items, nor will it prevent him from being productively employed.

23. The VA previously covered the costs related to Mr. Cadena's first wrist surgery.

24. The VA has agreed to cover the costs associated with Mr. Cadena's second wrist surgery.

## **CONCLUSIONS OF LAW**

1. Mr. Cadena brought this case pursuant to the Federal Tort Claims Act ("FTCA"). This court has jurisdiction pursuant to 28 U.S.C. § 1346(b)(1). Venue is proper in the Western District of Washington pursuant to 28 U.S.C. § 1402 because the acts and omissions complained of occurred in this district.

2. Pursuant to the FTCA, the United States shall be liable for tort claims "for injury… caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

3. Because Mr. Cadena's injuries occurred in Washington State, the law to be applied in this case is the substantive law of Washington State. *See Conrad v. United States*, 447 F.3d 760, 767 (9th Cir. 2006).

4. Under Washington law, a party asserting a claim of negligence has the burden to prove, by a preponderance of the evidence, duty, breach, causation and damage. *See Tolliver v.*

1 | *United States*, 957 F. Supp. 2d 1236, 1244 (W.D. Wash. 2012) (citing *Keller v. City of Spokane*, 44 P.3d 845 (Wash. 2002)).

5. Mr. Cadena's negligence claim fails because he did not prove, by a preponderance of evidence, that he was actually struck by an automatic door panel at the VA facility at American Lake on June 19, 2012.

    a. There is no evidence to support Mr. Cadena's claim that the left automatic door panel at the entrance to Building 132 detached from its physical connection to the right door panel, fired at three times its usual closing force, and struck him the precise moment that he was walking through the doorway.

    b. The preponderance of evidence establishes that Mr. Cadena pushed past the VA workers and initiated contact with the door panel himself.

6. Under Washington premises liability law, a landowner, like the VA, "is not a guarantor of safety—even to an invitee." *Mucsi v. Graoch Assocs. Ltd. P'ship No. 12*, 31 P.3d 684, 690 (Wash. 2001) (citing *Geise v. Lee*, 529 P.2d 1054 (Wash. 1975)). Rather, the landowner has a duty to exercise reasonable care, which requires "maintaining premises in a reasonably safe condition." *Zenkina v. Sisters of Providence in Washington, Inc.*, 922 P.2d 171, 174 (Wash. App. 1996) (internal citations omitted); *see also Mucsi*, 31 P.3d at 690.

    a. Mr. Cadena has failed to prove, by a preponderance of evidence, that the VA breached its duty to him to maintain its premises in a reasonably safe condition.

    b. The VA workers met the standard of care by taking reasonable precautions to create sufficient physical and visual barriers at the entrance to Building 132 while completing their inspection of the automatic doors.

7. A proximate cause of an injury is defined as a cause which, in a direct sequence, unbroken by any new, independent cause, produces the injury complained of and without which the injury would not have occurred. *See Stoneman v. Wick Constr. Co.*, 349 P.2d 215 (1960) (internal citations omitted). Proximate cause is composed of two distinct elements: (1) cause-in-fact and (2) legal causation. *Hartley v. State*, 698 P.2d 77, 82–83 (1985). Cause-in-fact refers to the "but for" consequences of an act, or the physical connection between an act and the resulting injury. *Id.* at 83. In contrast, legal causation "rests on policy considerations as to how far the consequences of a defendant's acts should extend [and] involves a determination of whether liability should attach as a matter of law given the existence of cause in fact." *Id.* at 779.

    a. Mr. Cadena has failed to prove, by a preponderance of evidence, that "but for" any action or inaction of the VA, he would not have torn his scapholunate ligament.

    b. The preponderance of the medical evidence establishes Mr. Cadena's scapholunate ligament injury was not caused by the automatic doors closing on him.

8. Given the record developed in this case, Plaintiff has failed totally to prove his case by a preponderance of the evidence, and the Court hereby **DISMISSES** the complaint with prejudice.

Dated this 15th day of June, 2017.

                                                     Ronald B. Leighton
                                                     United States District Judge